NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **POP TEST CORTISOL, LLC,** | Docket No.: 14-cv-7174 |
| **Plaintiff,** | **OPINION** |
| v. | |
| **THE UNIVERSITY OF CHICAGO, SUZANNE D. CONZEN, THE CONZEN RESEARCH LABORATORY, DENG PAN, MASHA KOCHERGINSKY, C. RIK BROEKKAMP, BERNARD PEETERS, TRACIE CAREY, MARTY HUBER, JR., BEATA VAN ROSMALEN, HENKJAN GELLEKINK, CHARDON PHARMA, a Foreign Jural Entity, and CORPORATE DOES 1 through 100 and JOHN and JANE DOES 1 through 100,** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

    This is a RICO and patent infringement case.  Plaintiff Pop Test Cortisol, LLC is a small, entrepreneurial pharmaceutical enterprise.  It alleges that it purchased exclusive rights to develop a drug from non-defendant conspirator Merck & Co. ("Merck") via a licensing agreement.  The Complaint alleges that Merck and other co-conspirators are continuing to develop the drug, in violation of the licensing agreement between Merck and Pop Test Cortisol.

    Plaintiff originally filed the case in state court.  A state court judge granted Merck's motion to dismiss and compel arbitration.  Plaintiff appealed that order all the way to the U.S. Supreme Court, where *certiorari* was denied.  Plaintiff did not

1

commence arbitration against Merck, but it did file this second iteration of the lawsuit against Merck's alleged co-conspirators.

Defendant The University of Chicago filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Individual Defendants, Suzanne Conzen, Deng Pan, and Masha Kocherginsky, who are all employees of The University of Chicago, also filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] Plaintiff opposed these motions and filed a motion for jurisdictional discovery. For the reasons set forth below, the Defendants' motions are granted, and the Plaintiff's motion is denied.

## I.   FACTUAL BACKGROUND

The drug at the center of this case is called ORG 34517. The Complaint alleges that Defendants Deng Pan and Masha Kocherginsky are the inventors of the drug, which functions as a cortisol-blocker. Through channels not specified in the Complaint, ORG 34517 became the property of a Netherlands pharmaceutical called N.V. Organon ("Organon"). Organon merged with Schering-Plough Corp., and then, on November 3, 2009, Schering-Plough merged with Merck, making Merck the owner of ORG 34517.

The Complaint alleges that, during the merger process, Merck composed a list of patents that it deemed "destined to fail" and endeavored to sell them. Merck believed that unloading low-value patents would alleviate regulatory "clogging" problems, which were delaying the finalization of the merger. Merck placed ORG 34517 on that list in what could best be described as an act of corporate absent-mindedness. ORG 34517 was not destined to fail, but on the contrary, showed promise in treating psychotic depression, breast cancer, and Cushing's Disease.

Pop Test Cortisol's entire business purpose was the purchase and development of ORG 34517. Plaintiff alleges that it became the owner of ORG 34517 via a licensing agreement with Merck dated December 7, 2010. The Complaint alleges that Merck realized it had made a terrible mistake when it sold ORG 34517 to Pop Test Cortisol and that Merck conspired to continue developing ORG 34517 in violation of the licensing agreement.

The Complaint alleges that two Merck employees in the Netherlands,

---

[1] Collectively, this Opinion will refer to all moving Defendants as the "Chicago Defendants."

Case 2:14-cv-07174-WJM-MAH   Document 60   Filed 06/18/15   Page 3 of 8 PageID: 2506

Defendants Bernard Peeters and Rik Broekkamp, realized the value of ORG 34517 and created a new entity, Chardon Pharma, to continue exploiting ORG 34517 even after Merck sold it to Pop Test Cortisol. Peeters and Broekkamp sent samples of ORG 34517 to Suzanne Conzen, a scientist at The University of Chicago, to test its therapeutic qualities in the treatment of breast cancer.

Conzen's experiments with ORG 34517 had promising results. The University thereafter applied for a patent. In this Complaint, Plaintiff alleges RICO, fraud, misappropriation of trade secrets, and patent infringement against the Chicago Defendants.

## II.   SUBJECT MATTER JURISDICTION

This is a civil action arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the patent laws of the United States, 35 U.S.C. § 101 *et seq.*, and various provisions of the common and statutory laws of the State of New Jersey. This Court has subject matter jurisdiction over this matter pursuant to 18 U.S.C. § 1964(a) and 28 U.S.C. §§ 1331, 1367, and 1338.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a complaint for lack of personal jurisdiction. "[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court applies the relevant statute to determine if it permits the exercise of jurisdiction. *Id.* at 259. The relevant statute is normally the long-arm statute of the forum state, but in this case, it could also be the RICO statute, 18 U.S.C. § 1965(d). *Id.*; *see also Rolo v. City Investing Co. Liquidating Trust*, 845 F. Supp. 182, 214 (D.N.J. 1993). Second, the court applies the principles of the Due Process Clause of the Constitution. *IMO v. Kiekert*, 155 F.3d at 259. In the case where the court sits in diversity, personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment, *see Isaacs v. Arizona Bd. of Regents*, No. 14-3985, 2015 WL 1534362, at *3 (3d Cir. Apr. 7, 2015), but where jurisdiction is based on a federal question, the Due Process Clause of the Fifth Amendment limits the exercise of personal jurisdiction, *DeJames v. Magnificence Carriers, Inc.*, 491 F. Supp. 1276, 1278 (D.N.J. 1980) *aff'd,* 654 F.2d 280 (3d Cir. 1981) (*citing Fraley v. Chesapeake and Ohio Railway Company*, 397 F.2d 1, 3-4 (3d Cir. 1968)). In this case, the difference has a distinction because, to comport with Fourteenth Amendment Due Process, the Plaintiff must prove that the Defendant has "minimum contacts" with the forum

state, but because the RICO statute provides for national service of process, the Fifth Amendment Due Process analysis is less geographically stringent with regards to minimum contacts. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001); *see also DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 283 (3d Cir. 1981); *Holland v. King Knob Coal Co.*, 87 F. Supp. 2d 433, 434 (W.D. Pa. 2000); *Estate of Carvel ex rel. Carvel v. Ross*, 566 F. Supp. 2d 342, 351 (D. Del. 2008) (internal citations omitted).

## IV.   DISCUSSION

### A. Minimum Contacts Under the Long-Arm Statute

The New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of the Fourteenth Amendment's Due Process clause. *See* N.J. Court. R. 4:4-4(c); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). "The due process limit to the exercise of personal jurisdiction is defined by a two-prong test. First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). "Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'" *Id.* at 150-51 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts" over a non-resident defendant can be established in one of two ways: general jurisdiction or specific jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). General jurisdiction exists where the non-resident defendant has general contacts with the forum state that are "continuous and systematic." *Arlington Indus., Inc. v. Elec. Custom Distributors, Inc.*, 817 F. Supp. 2d 473, 477 (M.D. Pa. 2011) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)). Contacts with a forum are "continuous and systematic" where the Defendant is "essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (U.S. 2014). Specific jurisdiction is established when a non-resident defendant has "purposefully directed" his activities at a resident of the forum, and the injury arises from or is related to those activities. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (*citing Burger King*, 471 U.S. at 472).

Plaintiff concedes that general jurisdiction does not apply (Plaintiff's Brief

4

(ECF No. 37-1) at 15) ("[S]pecific not general personal jurisdiction is at issue."). Plaintiff argues that the minimal contacts giving rise to specific jurisdiction over the Chicago Defendants include the following:

- Two University employees (Suzanne Conzen and Katie Gut) communicated with Merck regarding ORG 34517.

- The University of Chicago received millions of dollars in grant money from Merck and other pharmaceutical corporations based in New Jersey.

- The University maintains a Gift Annuity Program in the State of New Jersey, which is a financial program that the State of New Jersey regulates.

- The University provides general liability insurance for its alumni clubs in New Jersey.

The University of Chicago's contacts with New Jersey via the Gift Annuity Program, the alumni clubs' insurance, and New Jersey pharmaceuticals are irrelevant. As Plaintiff concedes, these are not "continuous and systematic contacts" necessary for general jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (U.S. 2014). Additionally, the district courts of the Third Circuit have repeatedly held, based on the seminal case *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985), that a district court does not have general jurisdiction over a non-resident university based on typical university-type activities in a forum, such as fundraising and recruiting. *See, e.g.*, *Watiti v. Walden Univ.*, No. 07-4782, 2008 WL 2280932 (D.N.J. May 30, 2008); *Kendall v. Trustees of Amherst Coll.*, No. 06-4983, 2007 WL 172396 (E.D. Pa. Jan. 18, 2007).

Most critically, the University of Chicago's contacts with New Jersey do not support a finding of specific jurisdiction because Plaintiff's claims do not "arise from" or "relate to" any of its contacts with New Jersey. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

On the whole, these contacts are too attenuated for personal jurisdiction to comport with "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), as no factual allegation in the Complaint would have reasonably put the Chicago Defendants on notice that they might be "haled into court" in New Jersey to answer for the violation of Pop Test Cortisol's rights, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The

allegations linking the Chicago Defendants to both New Jersey and to Pop Test Cortisol are so weak as to be uncolorable. *See U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001). The Complaint does not even allege that Pan or Kocherginsky sent any communications about ORG 34517 to New Jersey or knew about Pop Test Cortisol. Although Plaintiff produced some documents showing that Conzen and Gut communicated with Merck employees regarding ORG 34517, none of those Merck employees were located in New Jersey, and more crucially, none of the communications mention Pop Test Cortisol. Conzen, Kocherginsky, and Pan have submitted unchallenged affidavits affirming that they have no personal contacts with New Jersey and had never heard of Pop Test Cortisol before service of the Complaint.

On the face of the Complaint, there is no plausible theory of the Chicago Defendants' knowledge of Pop Test Cortisol's rights to ORG 34517. The only plausible way that the Chicago Defendants would have found out about Pop Test Cortisol's rights was through Merck, and Merck has no plausible motive for sharing the fact of Pop Test Cortisol's exclusive rights to ORG 34517 with anyone. Merck wanted The University of Chicago's scientists to help it understand the therapeutic properties of ORG 34517 so that Merck could enrich itself. Letting people at the University of Chicago know that their experimentation might constitute an illegal act could have only made the road to that goal bumpier. While the Complaint makes a conclusory conspiracy allegation, it lacks facts demonstrating that the Chicago Defendants had any knowledge of Pop Test Cortisol's exclusive rights to ORG 34517. Without so much as a plausible allegation that Defendants knew about Pop Test Cortisol's rights, it would not be fair to subject the Chicago Defendants to the *in personam* jurisdiction of the courts in this district.

### B. Personal Jurisdiction Under the RICO Statute

Plaintiff also argues that the Court has personal jurisdiction over all the Chicago Defendants via the national service of process provision of the RICO statute, 18 U.S.C. § 1965(d). (*See* Plaintiff's Brief (ECF No. 37-1) at 24-28 (and cases cited therein)). Pursuant to this statute, where a district court has personal jurisdiction over one RICO defendant, it can exert personal jurisdiction over all RICO defendants who have minimum contacts with the United States. *See Holland v. King Knob Coal Co.*, 87 F. Supp. 2d 433, 434 (W.D. Pa. 2000); *Estate of Carvel ex rel. Carvel v. Ross*, 566 F. Supp. 2d 342, 351 (D. Del. 2008) (internal citations omitted).

Plaintiff, however, does not plausibly allege a RICO claim. The elements of a RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The

6

Complaint does not allege a pattern of racketeering or explain what predicate acts of racketeering each defendant supposedly committed. Without a plausible RICO claim, 18 U.S.C. § 1965(d) cannot rightly form a basis for asserting personal jurisdiction over defendants not otherwise subject to the jurisdiction of the courts in this district.[2]

## V.   JURISDICTIONAL DISCOVERY

"The plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Upon an attack on personal jurisdiction, the Court must accept as true the allegations in the complaint, and resolve disputed issues of fact in favor of the plaintiff. *Id.* at 142 n. 1. Where the factual allegations suggest with "reasonable particularity" the possible existence of requisite contacts, the court should grant jurisdictional discovery before dismissing the case for lack of personal jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003).

Plaintiff's factual allegations do not suggest with "reasonable particularity" the possible existence of minimal contacts. The minimal contacts necessary here would be communications, exchanged between Merck employees in New Jersey and the Chicago Defendants, which mention Pop Test Cortisol's rights to ORG 34517. Plaintiff's list of proposed discovery demands is long, but nothing on that list would reveal that the Chicago Defendants knew about Pop Test Cortisol or its rights to ORG 34517.[3]

## VI.   CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss for lack of personal jurisdiction are **GRANTED**. Plaintiff's motion for jurisdictional discovery is **DENIED**. Because dismissal extends from deficiencies in the facts pleaded rather than deficiencies of evidence, dismissal will be without prejudice. *Cf. Grohs v. Hayman*, No. 09-5273, 2010 WL 2346617, at *8 (D.N.J. June 8, 2010). An

---

[2] The Court has also considered whether personal jurisdiction might be established under the patent statutes. Because the patent statutes do not provide for nationwide service of process, personal jurisdiction in a patent cause of action is analyzed pursuant to the long-arm statute. *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 297 (3d Cir. 1985). For the reasons stated in Part IV.A above, the long-arm statute does not create as a basis for personal jurisdiction in this case.

[3] Defendants also argued that Plaintiff's motion for jurisdictional discovery is untimely. The Court has assumed, without finding, that the motion was timely and denies the motion on its merits.

appropriate order follows.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 18, 2015**