<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
:
**POP TEST CORTISOL, LLC,**      :
                                :       **Civil Action No. 14-7174 (WJM)**
        **Plaintiff,**           :
                                :
    **v.**                       :
                                :
**THE UNIVERSITY OF CHICAGO, et al.,** :
                                :       **OPINION**
        **Defendants.**          :
_____ :

## I.   INTRODUCTION

This matter comes before the Court on the motion of Defendants Tracie Carey, M.D. and Marty Huber, M.D. (collectively, the "Merck Individuals") to compel arbitration, stay the action pending arbitration and impose sanctions pursuant to 28 U.S.C. § 1927.  <u>See</u> Mot. to Compel, Feb. 20, 2015, D.E. 14.  Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument.

For the reasons set forth below, the Court will compel the arbitration of Plaintiff's claims against the Merck Individuals; (ii) stay the action as to the Merck Individuals pending arbitration; and (iii) decline to impose sanctions pursuant to 28 U.S.C. § 1927.[1]

---

[1] In <u>Virgin Islands Water and Power Authority v. General Electric Int'l</u>, 561 F. App'x 131, 133-34 (3d Cir. 2014), the Third Circuit held that motions to compel arbitration are not dispositive.  <u>See also</u> <u>Cumming v. Independent Health Ass'n, Inc.</u>, Civ. No. 13-969, 2014 WL 3533460, *1 (W.D.N.Y. July 16, 2014) (noting that the Third Circuit, like the First Circuit, "recently held that decisions to compel arbitration are non-dispositive.").

II.    BACKGROUND

A.  Relevant Facts

The District Court recited the facts in its June 18, 2015, Opinion on the University of Chicago defendants' motion to dismiss for lack of personal jurisdiction.  Opinion, D.E. 60, June 18, 2015.  Therefore, the Court will limit its factual recitation to those facts relevant to the instant motions.

Plaintiff Pop Test Cortisol, LLC ("Plaintiff"), a New Jersey limited liability company, is a small pharmaceutical company that "developed saliva-based diagnostic products, including glucose, cholesterol, cortisol and others."  Compl., at ¶ 1, 19-20, Nov. 17, 2014, D.E. 1.  In its June 18, 2015, Opinion, the District Court noted that Plaintiff's "entire business purpose was the purchase and development of ORG 34517."  Opinion, D.E. 60, June 18, 2015, at 2.  ORG 34517 is a cortisol blocking drug originally designed to treat psychotic depression.  Complaint, D.E. 1, ¶¶ 21-24, 48; see also License Agreement, Exh. 1 to Compl., D.E. 1-1.

Through a series of mergers, an entity of Merck & Co., N.V. Organon n/k/a Merck Sharp & Dohme B.V. ("MSD"), had become the owner of ORG 34517.[2]  But when Merck was in the process of merging with Schering Plough, Merck sought to sell the patent to ORG 34517. Mistakenly or otherwise, Merck had designated the ORG as "destined to fail" and therefore of low value, and sought to sell it off in order to remove regulatory impediments to the merger with Schering Plough.  Id.[3]

Plaintiff alleges that it entered into a license agreement with Merck dated December 7,

_____

[2] The Court will hereinafter address the collective Merck companies as the Merck Entities unless otherwise noted.

[3] As the District Court observed, "ORG 34517 was not destined to fail, but on the contrary, showed promise in treating psychotic depression, breast cancer, and Cushing's Disease."  Opinion, D.E. 60, June 18, 2015, at 2.

2010, for the use of ORG 34517.  Plaintiff agreed to pay $500,000 to MSD.  Certif. of Wilfred P. Coronato, Feb. 20, 2015, D.E. 16 ("Coronato Certif."), Ex. C, § 7/1, at 12.  But, Defendants claim, Plaintiff never paid that money, despite Merck's demands and extensions of time to do so. Defendants contend that on May 9, 2013, Merck terminated the license agreement because of Plaintiff's failure to pay.  May 9, 2013, Termination Notice, Coronato Certif., Ex. E.

However, Plaintiff alleges that various employees at Merck conspired with others to continue to use and develop ORG 34517 in violation of the license agreement.  See id.  Plaintiff alleges that two Merck employees in the Netherlands, Defendants Bernard Peeters and Rit Broekkamp, created Chardon Pharma to continue to research ORG 34517.  Plaintiff further alleges that Peeters sent ORG 34517 and proprietary and confidential information belonging to Plaintiff and concerning its breast cancer study to Dr. Suzanne Conzen at the University of Chicago.  Plaintiff alleges that Dr. Conzen also was conducting research.

At all relevant times, Defendants Tracie Carey and Marty Huber, M.D., both New Jersey residents, were Merck employees.  Id. at ¶¶ 10-11.  Defendant Carey was an associate director of regulatory affairs at Merck, and Defendant Huber was a vice president.  Id.  Plaintiff alleges that the Merck Individuals improperly submitted documents containing Plaintiff's trade secrets and intellectual property to the United States Food and Drug Administration.  Id.

### 1.  The Arbitration Agreement

Section 13.2 of the License Agreement contained an arbitration provision, which provided as follows:

> All disputes arising out of or relating to this Agreement, or the rights or obligations of the Parties hereunder, or relating in any way to the relationship between the Parties with respect to the Licensed Compound or Licensed Product, shall be finally and exclusively settled by arbitration by a panel of three (3) arbitrators.

License Agreement, D.E. 1-1, at § 13.2.  The License Agreement further provided that the

arbitration requirement would survive termination of the agreement.  Id. at § 12.6.

The License Agreement also contained certain definitions that are relevant here:

> "Licensed Compound" shall mean that certain Licensor compound
> currently known as ORG 34517. . . .
>
> "Licensed Product" shall mean any human pharmaceutical product,
> dosage form or preparation, including, without limitation, a
> Combination Product, that contains the Licensed Compound or any
> pharmaceutically acceptable chemical complex or solvates thereof.
>
> "Combination Product" shall mean a Licensed Product that
> comprises two (2) or more active ingredients, where at least one
> (1) is a Licensed Compound.

Id. at §§ 1.5, 1.24, 1.25.

The License Agreement further required that the Commercial Arbitration Rules of the

American Arbitration Association ("AAA") govern the arbitration, and that the proceedings take

place in Newark, New Jersey.  Id.  In addition, the License Agreement provided that "all disputes

under this Agreement shall be governed by binding arbitration pursuant to the mechanism set

forth in Article XIII herein."  Id. at § 14.2.

### B.  Procedural History

The procedural history of this litigation is complicated.  On March 6, 2013, Plaintiff filed

an action in the Superior Court of New Jersey, Bergen County, against the Merck Entities,

seeking injunctive relief and damages.  See Compl., at ¶ 14, Nov. 17, 2014, D.E. 1; see also

Verified Compl., Exh. F to Certification of Wilfred P. Coronato, Esq. ("Coronato Cert."), Mar. 6,

2013, D.E. 16-6.  Merck and the Merck entities moved to compel arbitration pursuant to the

License Agreement.  See Compl., at ¶ 14, Nov. 17, 2014, D.E. 1; see also Merck's Cross-Mot. to

Compel Arbitration and Dismiss or Stay, Mar. 25, 2013, Exhibit S to Coronato Cert., D.E. 16-19.

The state court: (1) granted the Merck Entities' cross-motion to compel arbitration, (2) dismissed the complaint against the Merck Entities, and (3) ordered that the dismissed claims against the Merck Entities proceed to arbitration.  See Order, May 2, 2013, Exh. A to Coronato Cert., D.E. 16-1.

Plaintiff thereafter moved for reconsideration of the state court's order.  See Mot. for Reconsideration, May 13, 2013, Exh. 5 to the Certification of Lynn M. Terrebonne in Supp. of Pop Test LLC's Brief in Opp'n to Defendants' Mot. to Compel Arbitration ("Terrebonne Cert."), D.E. 35.  On June 7, 2013, the state court affirmed its order dismissing the complaint as to the Merck Defendants and compelling arbitration.  See Order, June 7, 2013, Exh. B to Coronato Cert., D.E. 16-2.

Plaintiff appealed the state court's rulings to the New Jersey Appellate Division.  See Pop Test Cortisol, LLC v. Merck & Co., Inc., 2014 WL 16600605, at *1 (N.J. Super. Ct. App. Div. Apr. 28, 2014) ("Pop Test I").  The Appellate Division, however, affirmed both orders compelling arbitration of Plaintiff's claims against Merck.  See id.  The New Jersey Supreme Court denied certification.  See Pop Test Cortisol, LLC v. Merck & Co., Inc., 218 N.J. 532 (2014).  The United States Supreme Court also denied certiorari.  See Pop Test Cortisol, LLC v. Merck & Co., Inc., 135 S. Ct. 729 (2014).

While Plaintiff's appeal was pending before the Appellate Division, the remaining defendants in the state court case removed the complaint to the United States Court for the District of New Jersey.  See Notice of Removal, June 3, 2013, Exh. K to Coronato Cert., D.E. 16-11.  Plaintiff then filed a motion asking the District Court to reconsider the state court ruling under Federal Rule of Civil Procedure 59(e).  See Mot. for Reconsideration, July 2, 2013, Exh. L to Coronato Cert., D.E. 16-12.  Plaintiff also sought to amend its complaint.  See Second

Amended Verified Compl., July 10, 2013, Exh. M to Coronato Cert., D.E. 16-13.  Merck and the

Merck Individuals moved for sanctions and to compel arbitration.  See Mot. for Sanctions, Sept.

25, 2013, Exh. N to Coronato Cert., D.E. 16-14; Mot to Compel Arbitration, Oct. 25, 2013, Exh.

O to Coronato Cert., D.E. 16-15.  On December 23, 2014, the District Court remanded the case

to state court for lack of subject matter jurisdiction.  See Opinion, December 23, 2014, Exh. P to

Coronato Cert., D.E. 16-16.

       Plaintiff filed this case on November 17, 2014, while its petition for *certiorari* was

pending before the United States Supreme Court.  See Compl., at ¶ 14, Nov. 17, 2014, D.E. 1.

The Merck Individuals responded by filing the instant motion compel arbitration.  See Mot. to

Compel, Feb. 20, 2015, D.E. 14.

## III.   ARGUMENTS

       In support of arbitration, the Merck Individuals make three arguments.  First, the Merck

Individuals argue that the New Jersey state courts' determination concerning the "validity, scope

and enforceability of the License Agreement's arbitration provision . . . ." binds Plaintiff.  Mot.

to Compel, at 8, Feb. 20, 2015, D.E. 15.  The Merck Individuals contend that the Appellate

Division held that Plaintiff's claims in the state case arose from or related to the "licensing

agreement itself or the actions of the parties in relationship to the licensed compound and

resulting products."  Id. at 9 (citing Pop Test I, 2014 WL 1660605, at *4).  The Merck

Individuals thus argue that Plaintiff's claims in this case directly arise from or relate to the

licensed compound, ORG 34517, which means that Plaintiff is also bound by the state court's

ruling concerning the License Agreement's arbitration provision.  See Mot. to Compel, at 9-10,

Feb. 20, 2015, D.E. 15.

       Second, the Merck Individuals argue that the License Agreement requires Plaintiff to

arbitrate its claims.  See id. at 10.  The Merck Individuals assert that because the state court determined that the parties must arbitrate claims arising from or relating to the License Agreement, the sole question in this case is whether Plaintiff's claims arise from or relate to either the License Agreement or ORG 34517.  Id. at 12-14.  The Merck Individuals argue that each cause of action in Plaintiff's Complaint "relate[s] to the License Agreement and concern[s] both the relationship between [Plaintiff] and the Merck entities and the performance of their respective obligations under that License Agreement."  Id. at 16.

Third, the Merck Individuals contend that the arbitration provision applies to both Merck and the Merck Individuals.  See id. at 18.  For instance, the Merck Individuals argue that despite not being signatories to the License Agreement, they are bound under the terms of the License Agreement, including its arbitration provision, because they are Merck's agents.  See id. at 20. They further contend that Plaintiff alleges wrongdoing which allegedly occurred within the scope of the Merck Individuals' employment with the company.  See id. at 20-21.  Accordingly, they ask the Court to compel arbitration of Plaintiff's claims against them and stay the matter as to the Merck Individuals pending arbitration.  See id.

In addition to compelling arbitration and staying Plaintiff's claims, the Merck Individuals also move for sanctions under 28 U.S.C. § 1927, because they contend that Plaintiff's counsel's conduct in this litigation has been unreasonable.  See id.  Specifically, the Merck Individuals argue that Plaintiff's counsel has "refus[ed] to accept the plain language of the License Agreement, the well-established legal framework that requires courts to enforce agreements to arbitrate and the rulings of all three levels of New Jersey's state courts[.]"  Id. at 23.  This "misconduct" has resulted in the waste of judicial resources and a needless increase in litigation costs.  See id.

In opposition, Plaintiff neither disputes the validity of the License Agreement's arbitration provision, nor argues that the claims do not fall within the scope of the arbitration provision.  Instead, Plaintiff makes two arguments concerning the arbitration.[4]  First, Plaintiff argues that the state court's May 2 and June 7, 2013 orders permitted Plaintiff to pursue its claims against non-signatories to the License Agreement.  See Pl.'s Opp'n Br., at 8, Mar. 23, 2015, D.E. 32.  Plaintiff asserts that this Court must give the state court's rulings full faith and credit under 28 U.S.C. § 1738.  See id.

Second, Plaintiff contends that the Merck Individuals may not enforce the arbitration provision of the License Agreement because they did not sign the License Agreement.  See id. at 8-11.  The Court construes this argument as essentially challenging the Merck Individuals' standing to enforce the License Agreement's arbitration agreement.

Regarding the Merck Individuals request for sanctions, Plaintiff argues that its claims are neither frivolous nor vexatious.  See id. at 11-13.  Rather, Plaintiff asserts that the claims at issue are reasonable and comply with the state court's rulings.  See id.

---

[4] The Merck Individuals ask the Court to disregard arguments Plaintiff made in its opposition brief because Plaintiff's submission was untimely.  See Reply Br., at 1-2, Mar. 30, 2015, D.E. 47.  They argue that Plaintiff's opposition papers were due on March 2, 2015 but Plaintiff submitted its brief on March 23, 2015, three weeks late.  See id.

The Merck Individuals correctly point out that although Plaintiff invoked the automatic extension under the Local Civil Rules, that automatic extension only applies to dispositive motions, see L. Civ. R. 7.1(d)(5), and a motion to compel arbitration is not dispositive.  See Virgin Islands Water and Power Auth. V. Gen. Elec. Int'l Inc., 561 F. App'x 131, 135 (3d Cir. 2014).  Thus, Plaintiff's opposition brief was indeed untimely.  Local Civil Rule 7.1(d)(7) permits the Court to "reject any brief or other paper not filed within the time specified."  Although the Court could disregard Plaintiff's papers, it declines to so, and instead considers Plaintiff's opposition on the merits.

**IV.   ANALYSIS**

      **A.  Arbitration**

On a motion to compel arbitration and stay the action, a court may, depending on the circumstances in a particular case, apply the standard of review used by district courts in resolving motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or the standard used for deciding summary judgment motions pursuant to Federal Rule of Civil Procedure 56.  See Guidotti v. Legal Helpers Debt Resolution L.L.C., 716 F.3d 764, 771-73 (3d Cir. 2013).   A Rule 12(b)(6) standard is appropriate where "it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause . . . ."  Id. at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011).  In contrast, a court should apply a Rule 56 standard in considering a motion to compel arbitration where "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue."  Id.  In those cases, a court should permit the parties to engage in discovery on the question of arbitrability before considering whether to compel arbitration.  Id.

Here, the Court considers the motion to compel under the Rule 12(b)(6) standard. Plaintiff attached the License Agreement containing the arbitration provision to the Complaint, and incorporated it by reference.  See License Agreement, Exh. 1 to Compl., Nov. 17, 2014, D.E. 1-1.  Thus, in this case, the issue regarding whether Plaintiff's claims are subject to arbitration may be ascertained from the undisputed License Agreement and documents addressed in the parties' papers, as well as the law.

#### 1. The Validity and Scope of the License Agreement's Arbitration Provision

The Federal Arbitration Act ("FAA") permits district courts to issue orders compelling arbitration of contractually valid and enforceable arbitration agreements.  9 U.S.C. § 4.  When a party moves to compel arbitration, a court's analysis is "limited to a narrow scope of inquiry . . . . such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration clause."  In re Pharmacy Benefit Managers Antitrust Litig., 700 F.3d 109, 116 (3d Cir. 2012).  If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court must then direct the parties to proceed with arbitration in accordance with their agreement.  See 9 U.S.C. § 4; see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980).  Thus, the FAA establishes a strong policy in favor of compelling arbitration.  Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000); see also John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998).  Still, the court must determine whether an enforceable arbitration agreement exists between the parties.  Olick, 151 F.3d at 137.  If the court finds that the parties did not enter into a valid agreement to arbitrate, then the court must decline to compel arbitration.  See Sandvik, 220 F.3d at 107.

In considering whether to enforce an arbitration agreement, a court must engage in a two-step inquiry.  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009); Derbin v. Access Wealth Management, LLC, No. 11-812 (FLW), 2011 WL 4751992, at *3 (D.N.J. Oct. 7, 2011).  The Court must first determine whether there is a valid agreement to arbitrate between the parties.  Id.  If a valid agreement exists, the Court must then determine whether the parties' dispute falls within the scope of that valid agreement.  Id.

Here, the parties do not dispute that Plaintiff and Merck entered into a valid arbitration

agreement or that the arbitration agreement covers the dispute at issue.[5]  Nor could the parties

dispute these issues.  The parties both acknowledge that a state court judge already made a

determination about the validity and the scope of the License Agreement's arbitration provision.

See Motion to Compel, at 8-9, Feb. 20, 2015, D.E. 15; Pl.'s Opp'n Br., at 5-7, Mar. 23, 2015,

D.E. 32.[6]  Specifically, the state court judge ruled that "[Pop Test Cortisol] is bound to a

Licensing Agreement with the Defendants Merck, MSD Corp., and, more specifically, MSD

B.V.[,]" and that the arbitration provision contained in the License Agreement was fully

enforceable against Plaintiff.  See Rider to Letter Order, at 3, 5, May 2, 2013, Exh. A to

Coronato Cert. D.E. 16-1.  Thus, the state court ruled that Plaintiff had to proceed with its claims

through arbitration in accordance with the License Agreement.  See id. at 5.  The state court

judge reaffirmed its ruling in an order dated June 7, 2013.  See Order & Rider to Letter Order,

June 7, 2013, Exh. B to Coronato Cert., D.E. 16-2.  On appeal, the Appellate Division upheld the

state court's decision and further explained that "the scope of the [arbitration] provision is not

---

[5] The parties, however, disagree regarding whether the arbitration provision can be enforced by the Merck Individuals, who were non-signatories to the License Agreement.  For the reasons stated in Section IV.A.2 of Opinion, the Court finds that the agreement can be enforced by the Merck Individuals.

[6] Although Plaintiff acknowledges that the state court ruled that both Plaintiff and Merck are bound by the License Agreement's arbitration provision, Plaintiff incorrectly argues that the state court ruled that the agreement binds only the corporate entities.  See Pl.'s Opp'n Br., at 6-7, Mar. 23, 2015, D.E. 32.  Plaintiff argues that this Court must give full faith and credit to the state court's decision pursuant to 28 U.S.C. § 1738.  See id.  First, in granting Merck's motion to compel arbitration, the state court noted that the individual defendants in that case, Bernard Peeters, C. Rik Croekkamp and Chardon Pharma, had not moved to compel arbitration.  See Order & Rider to Letter Order, at 3, May 2, 2013, Exh. A to Coronato Cert., D.E. 16-1.  Thus, that issue was not before the Court.  Second, the Merck Individuals were not a party to the state case, and therefore, the state court's decision does not preclude them from litigating the arbitration issue, because they have not yet had a "full and fair opportunity" to litigate the issues.  See United States ex rel PCC Const., Inc. v. Star Ins. Co., 90 F. Supp. 2d 512, 517-18 (D.N.J. 2000) ("New Jersey's Supreme Court has noted that the litigant against whom issue preclusion is invoked must have had a full and fair opportunity to litigate the issue in the previous tribunal.") (internal citations and quotations omitted).

limited to disputes concerning the parties' rights under the licensing agreement itself, but also includes disputes between them involving the compound and products derived from it." See Pop Test I, 2014 WL 1660605, at *3 (D.N.J. Apr. 28, 2014).  In other words, the Appellate Division held that the License Agreement requires Plaintiff to arbitrate any claims against Merck relating to ORG 34517 and products derived from ORG 34517.  See id.  Plaintiff is bound by the Appellate Division's decision; that is, given the state court decisions, Plaintiff is collaterally estopped from relitigating the validity of the License Agreement's arbitration provision, and whether the provision applies to any claims arising from or relating to ORG 34517.  See Ryan v. Liss, Tenner & Goldberg Securities Corp., 683 F. Supp. 480, 483 (D.N.J. 1988) (holding that plaintiffs were precluded from relitigating the validity and scope of an arbitration agreement in federal court where a state court had already determined that a valid arbitration agreement existed and that the dispute was within the scope of the arbitration agreement).

Even if this Court were to consider the issue anew, it would agree with the state court that the claims against the Merck Individuals fall well within the scope of the License Agreement, and therefore are subject to arbitration.  The arbitration provision of the License Agreement specifically governed "[a]ll disputes arising out of or relating to this Agreement, or the rights or obligations of the Parties hereunder, or relating in any way to the relationship between the Parties with respect to the Licensed Compound or Licensed Product[.]"  License Agreement, D.E. 1-1, at § 13.2.  The License Agreement also made clear that the "Licensed Compound" included any "human pharmaceutical product, dosage form or preparation" containing ORG 34517.  Id. at § 1.5.  Moreover, the premise of the claims against the Merck Individuals is that they were parties to a conspiracy to continue to develop ORG 34517 despite Merck having entered into the License Agreement with Plaintiff.  That issue is clearly within the scope of the arbitration, and

neither the arbitration provision nor any other part of the License Agreement limits the arbitration solely to the signatories to the agreement.  To hold otherwise would allow Plaintiff to circumvent the arbitration provision by bringing claims against individual employees of Merck, despite the fact those employees were acting as agents of Merck, and thereby eviscerate the plain language of the arbitration provision.  That result would hardly be consistent with the principle that under the FAA, the court is to consider whether the "arbitration agreement applies to a particular controversy."  In re Pharmacy Benefit Managers Antitrust Litig., 700 F.3d at 116.

> For the same reasons, Plaintiff's fraud and RICO claims do not alter this analysis. Plaintiff's fraud and RICO claims against the Merck Individuals relate to their alleged "campaign of lies, fraud and corruption, to divest [Plaintiff] of its rights in . . . ORG 34517 and its uses" and seeks recovery for alleged "damage to [Plaintiff's] reputation and good will; the impairment of [Plaintiff's] executed contracts, including the December 7th [License] Agreement; and the loss of its rights in ORG 34517 and the Pop Test IP."  Compl., at ¶¶ 193-232, 239, 269, D.E. 1.  Plaintiff's claims thus arise from or relate to their treatment and handling of the license compound, ORG 34517, as agents of Merck, and therefore fall directly within the scope of the License Agreement's arbitration provision.  Accordingly, Plaintiff is precluded from relitigating the issue of the validity and scope of the arbitration provision.  See Ryan, 683 F. Supp. at 483.

> The Court therefore finds that the License Agreement's arbitration agreement is valid and that Plaintiff's claims against the Merck Individuals fall within the scope of the arbitration agreement.[7]

---

[7] The Court also notes that there does not appear to be a dispute between the parties concerning whether Plaintiff's fraud and RICO claims are arbitrable.  Notwithstanding, the Court notes that both common law fraud claims and RICO claims generally may be subject to arbitration.  See In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 234 n.14 (3d Cir. 1998) (noting that the Supreme Court has approved arbitration of RICO claims); Polaris

## 2.   The Applicability of the License Agreement to the Merck Individuals

The next issue is whether the Merck Individuals can enforce that provision.  Essentially, Plaintiff argues that because the Merck Individuals did not sign the License Agreement they lack standing to enforce the License Agreement's arbitration provision.  See Pl.'s Opp'n Br., at 7-8, Mar. 23, 2015, D.E. 32.  The Merck Individuals disagree, arguing that although Merck, and not the Merck Individuals, signed the License Agreement, the Merck Individuals, as employees of Merck, can still compel arbitration pursuant to the Agreement.  See Mot. to Compel, at 18, Feb. 20, 2015, D.E. 15.

The Court finds the Merck Individuals are covered by the License Agreement's arbitration provision.  Courts have consistently held that traditional principles of agency law bind an entity's agents to arbitration agreements entered into by that entity, even when those agents are not signatories to the agreement.  See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993) (applying agency principles to enforce an arbitration agreement against a non-signatory agent of party bound to the agreement); Trott v. Paciolla, 748 F. Supp. 305, 309 (E.D. Pa. 1990) (holding that claims against a Merrill Lynch employee were subject to arbitration because "[a]n entity such as Merrill Lynch can only act through its employees and an arbitration agreement would be of little practical value if it did not extend to employees."); Derbin, 2011 WL 4751992, at * 14 (finding that an arbitration agreement was enforceable by agents of a company under principles of agency law).  Here, the Merck Individuals are Merck employees who, by the plain terms of Plaintiff's allegations, were acting as agents of Merck. Indeed, Plaintiff's claims against the Merck Individuals relate exclusively to acts in which the Merck Individuals engaged while employed by and acting as agents of Merck.  The parties do

---

Capital, LLC v. Gaspersz, 2012 WL 5200050, at *3 (D.N.J. Oct. 1, 2012) (finding that a fraud claim that arose out of or related to an arbitration agreement was subject to arbitration).

not dispute that Merck is bound by the License Agreement.  Accordingly, the Merck Individuals are similarly bound by the License Agreement, including its arbitration provision.  See Reljic v. Tullett Prebon Americas Corp., No. 11-01323, 2011 WL 2491342, at *5 (D.N.J. June 21, 2011) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives, are also covered under the terms of such agreements.").

Plaintiff argues that the cases cited by the Merck Individuals are factually distinguishable.  See Pl.'s Opp'n Br., at 8-9, Mar. 23, 2015, D.E. 32.  Plaintiff asserts that the caselaw establishes that the agency principles raised by the Merck Individuals only apply in the specific context of securities brokers.  See id.  Plaintiff, however, misinterprets the case law.  Indeed, no special application exists.  The case law is clear that "traditional principles of agency law may also bind a non-signatory to an arbitration agreement . . . ."  Derbin, 2011 WL 4751992, at *6.  For instance, one case that Plaintiff attempts to distinguish is Trott v. Paciolla, 748 F. Supp. 305 (E.D. Pa. 1990).  In Trott, the plaintiffs sued their broker and his employers, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Prudential-Bache Securities, Inc. for, among other things, violations of the Securities Exchange Act of 1934.  See id. at 307.  The Plaintiffs signed two agreements containing arbitration provisions with Merrill Lynch.  Id. at 308.  The defendant-broker moved to compel arbitration, and Plaintiffs opposed, arguing that the plaintiffs' claims against the defendant-broker were not subject to arbitration because the broker had not signed the arbitration agreements.  Id. at 309.  The court disagreed and explained that an arbitration agreement signed by an entity would have little value if it could not apply to employees of that entity.  Id.  The court further noted that courts have found non-signatories to be bound by arbitration agreements in other contexts.  Id.  Thus, nothing in the court's opinion limited the court's holding to the context of securities brokers or a specific type of claim.

15

Instead, as in the other cases cited by the Merck Individuals, the court applied traditional agency principles to bind an agent of an entity to an arbitration agreement.

Here, the Court finds that agency principals likewise bind the Merck Individuals to the License Agreement's arbitration provision.  Accordingly, the Merck Individuals can compel arbitration under the License Agreement's arbitration provision.  Because no dispute exists as to the validity and scope of that provision, the Undersigned respectfully recommends that the District Court compel the arbitration of Plaintiff's claims against the Merck Individuals.

Having determined that Plaintiff's claims against the Merck Individuals are subject to arbitration, the Court must next determine whether a stay pending arbitration is appropriate. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The plain language of § 3 of the FAA calls for a mandatory stay pending arbitration.  See Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").  Here, the Merck Individuals request a stay of the claims against them.  See Mot. to Compel, at 21-22, Feb. 20, 2015, D.E. 15.  Given the mandatory stay required by § 3 of the FAA, the Court will stay the litigation pending the outcome of the arbitration proceedings.

**B. Sanctions**

Section 1927 of Title 28 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 142 (3d Cir. 2009) (quoting LaSalle Nat'l Bank v. First Connecticut Holding Grp., L.L.C. XXIII, 287 F.3d 279, 289 (3d Cir. 2002)) (internal quotation marks omitted).  To impose sanctions under § 1927, Third Circuit courts require finding that an attorney has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 101 (3d Cir. 2008) (quoting In re Prudential Ins. Co. of Am. Sales Practice Litig., 278 F.3d 175, 188 (3d Cir. 2002)) (internal quotation marks omitted).  Further, it is the defendant's burden to show through clear and convincing evidence that plaintiff's conduct indeed constitutes bad faith or intentional misconduct.  See Sutton v. Am. Fed'n of State, 1997 U.S. Dist. LEXIS 778, at *22-23 (E.D. Pa. Jan. 27, 1997) (imposing sanctions pursuant to § 1927 because the court found by clear and convincing evidence that counsel had acted in willful bad faith "by unreasonable and vexatious misinterpretation of orders of the court, by ineffective execution of their obligation of due diligence, and with an intent to harass" opposing attorneys).

Here, the Court finds that Plaintiff counsel's conduct does not rise to the level of bad faith

necessary for the imposition of sanctions under § 1927.  Third Circuit courts have consistently construed § 1927 narrowly, and therefore, the Court is persuaded that the Merck Individuals have not established that Plaintiff's counsel engaged in sanctionable conduct.  The Merck Individuals contend that Plaintiff's counsel has continuously and unsuccessfully opposed arbitration, despite the plain language of the agreement.  See Mot. to Compel, at 23, Feb. 20, 2015, D.E. 15. However, the Court cannot find that Plaintiff's counsel's conduct is patently unreasonable or made in bad faith.  Plaintiff's counsel advocated zealously by appealing an adverse order. Moreover, Plaintiff's counsel represents that he did not include the Merck Individuals as parties in this action for any improper purpose.  See Pl.'s Opp'n Br., at 13, Mar. 23, 2015, D.E. 32. Instead, Plaintiff's counsel zealously represented his client and relied on his interpretation, albeit erroneous, of the state court's ruling.  Although the Court has recommended compelling arbitration here, the Court cannot find that Plaintiff's counsel acted in bad faith.  See Grider v. Keystone Health Plan Cent., Inc., 580 F.3d at 142 ("[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal.") (internal citations and quotations omitted).

For these reasons, the Court finds that Plaintiff counsel's conduct in this matter does not rise to the level of sanctionable conduct.  See Baker Indus. Inc. v. Cerberus, Ltd., 764 F.2d 204, 208 (3d Cir. 1985) (holding the offending attorney's conduct must be egregious in nature to impose sanctions); Benson v. Giant Food Stores, LLC, 2011 WL 6747421, at *3 (E.D. Pa. Dec. 22, 2011) (stating that a party seeking sanctions under § 1927 "bears a heavy burden"). Accordingly, the Court will deny the Merck Individual's request for sanctions pursuant to 28 U.S.C. § 1927.

**V.**    **CONCLUSION**

For the foregoing reasons, this Court grants Defendants' motion to compel arbitration and to stay this action pending arbitration.  The Court denies the imposition of sanctions under 28 U.S.C. § 1927.  An appropriate Order accompanies this Opinion.

_s/ Michael A. Hammer_____
**UNITED STATES MAGISTRATE JUDGE**

**Dated:**  August 27, 2015